**Matter of the Applications for citizenship of Alejo Trabocotano TANO, Eriberto Chavez Abella, Jesus Monzon Martinez, Ignacio Martal Romano, Paulino Josue Elizalde, Emiliano Jesmundo Magallanes, Magtangol Cruz Politan, Petitioners.**

Nos. 118325, 118327, 118331, 118337, 118338, 119195, 118329.

United States District Court
N. D. California, S. D.

Oct. 25, 1955.

Jack L. Burnam, San Francisco, Cal., for applicants.

Lloyd H. Burke, U. S. Atty., San Francisco, Cal., for the Government.

GOODMAN, District Judge.

Petitions for naturalization of the above named seven petitioners were filed March 31, 1955, pursuant to § 330(a) (2) of the Immigration and Nationality Act of 1952, 66 Stat. 251, 8 U.S.C.A. § 1441(a) (2).

All of the petitioners are natives of the Philippines and all served on United States vessels as stewards. None has ever been admitted to the United States for permanent residence. Some of the petitioners had five years sea service prior to September 23, 1950, the effective date of the Internal Security Act of 1950. 64 Stat. 987. The others did not.

In order to understand the posture of these present petitions, it is necessary to briefly chronologize the pertinent statutory provisions.

Section 325(a) of the Nationality Act of 1940, 54 Stat. 1150, 8 U.S.C. § 725, 1946 Edition, permitted aliens who served five years on United States vessels to become naturalized without having been admitted to the United States for permanent residence. The law remained the same thereafter until 1950. Then, by the Internal Security Act of 1950, alien seamen became inadmissible to citizenship by virtue of sea service unless they had previously been lawfully admitted to the United States for permanent residence. 64 Stat. 1015, 8 U.S.C. § 725, 1946 Edition, Supplement IV.

In 1952, the immigration and nationality laws were completely revised by the adoption of the Immigration and Nationality Act of 1952. 66 Stat. 163. The 1952 Act retained the provision of the Internal Security Act of 1950 that alien seamen to be eligible for naturalization by reason of service on United States vessels must first have been admitted to the United States for permanent residence. 66 Stat. 251, 8 U.S.C.A. § 1441(a) (1). But, the 1952 Act also specially provided that alien seamen who had five years of sea service prior to the effective date of the Internal Security Act of 1950, September 30, 1950, could be naturalized without satisfying the requirement of admission for permanent residence, if application for citizenship was filed within one year from the effective date of the 1952 Act; that is, before December 24, 1953. 66 Stat. 251, 8 U.S.C. § 1441(a) (2).

The petitioners who had five years sea service prior to September 23, 1950, did not apply for citizenship while § 325(a) of the Nationality Act of 1940 was still in effect, and they were eligible for citizenship solely by reason of their sea service. After the Internal Security Act of 1950 became effective on September 23, 1950, they were no longer eligible for citizenship because they had not been admitted to the United States for permanent residence. After the passage of the 1952 Act, these petitioners again became eligible for citizenship, provided they filed petitions within one year after December 24, 1952, the effective date of the 1952 Act. They failed to file their petitions within this time.

The other petitioners who did not have five years sea service prior to September 23, 1950, never became eligible for naturalization under the Naturalization Act of 1940. They never became eligible for naturalization under the Internal Security Act of 1950, because they had not been admitted for permanent residence. They were not aided by the special provision of the 1952 Act because they had not had five years sea service prior to September 23, 1950.

Thus, the petitioners who did have five years sea service prior to September 23, 1950, failed to file applications for citizenship during any period of time when they were eligible. The petitioners who did not have five years sea service prior to September 23, 1950, never became eligible for naturalization under any statute.

But, it is contended by all of the petitioners that the general savings clause, Section 405(a), of the 1952 Act, 8 U.S. C.A. § 1101 note, somehow or other

"saves" their petitions filed in 1955. Section 405(a) provides that nothing contained in the 1952 Act, unless otherwise specifically provided therein, shall affect any "status" or "condition" existing at the time of the effective date of the 1952 Act. Petitioners claim that they have some sort of "status" or "condition" that Section 405(a) preserved for them. It is difficult to perceive just what counsel assert to be such a "status" or "condition." At the time of the effective date of the 1952 Act, the Internal Security Act of 1950 was in effect, and the petitioners who had once been eligible for naturalization under the 1940 Act had already lost their eligibility. The other petitioners had never become eligible for naturalization. Thus none of the petitioners were *then* eligible for naturalization, nor did they have any status which could ripen into eligibility, since none of them had been admitted for permanent residence.

Aure v. United States, 9 Cir., 1955, 225 F.2d 88, cited by petitioners is not apropos because it applied the savings clause, section 405(a), to a right under section 324 of the 1940 Act, a provision unaffected by the Internal Security Act of 1950. At the time the 1952 Act became effective, Aure was then in the United States Navy and had already served for more than three years; he was then eligible for naturalization, under the provisions of Section 324 of the 1940 Act, although he had not filed his application. He had a *then* existing status which was preserved by the savings clause of the 1952 Act.

Since on the effective date of the 1952 Act petitioners had no "right" or "status" or "condition," they cannot advantage themselves of the savings clause.

Petitioners' various claims that they *attempted* to file petitions for citizenship within the times when they were statutorily eligible were based on the most flimsy and insubstantial evidence, and thus must be rejected.

All petitions will be denied.

Present findings pursuant to the Rules.